LEARY v RUPP

Docket No. 77-5228. Submitted January 16, 1979, at Detroit.—Decided
    March 20, 1979. Leave to appeal applied for.

    Jane F. B. Leary and Cornelius F. Leary, her husband, brought a
    complaint against Edson Rupp, M.D., and William Beaumont
    Hospital alleging medical malpractice in the treatment of Jane
    Leary. The hospital was subsequently dismissed from the action
    by stipulation of the parties. The Oakland Circuit Court, Rich-
    ard D. Kuhn, J., thereafter granted the motion of defendant
    Rupp for accelerated judgment based on the two-year statute of
    limitations for medical malpractice. Plaintiffs appeal. *Held:*

    1. An action based on malpractice of a state licensed person
    must be brought within two years of the time when such
    person discontinues treating or otherwise serving the plaintiff,
    or within two years of the time plaintiff discovers, or in the
    exercise of reasonable diligence should have discovered, the
    asserted malpractice.

    2. Accelerated judgment grounded on the statute of limita-
    tions is improper, in an action alleging medical malpractice,
    where material factual disputes exist regarding discovery of the
    asserted malpractice.

    3. In order to discover asserted malpractice a person must
    know of the act or omission itself and have good reason to
    believe the act itself was improper or was done in an improper
    manner; under certain circumstances mere knowledge of the
    act will be sufficient because it alone gives good reason to
    believe it was improper.

    4. The accelerated judgment should not have been granted
    since the parties disputed the date plaintiff discovered or by
    reasonable diligence could have discovered the asserted mal-
    practice and reasonable minds could differ as to when she
    should have realized that the doctor had acted improperly.

    Reversed and remanded.

REFERENCES FOR POINTS IN HEADNOTES
[1] 51 Am Jur 2d, Limitation of actions §§ 102, 105, 107.
[2] 51 Am Jur 2d, Limitation of Actions § 470.

1. NEGLIGENCE — MALPRACTICE — LIMITATION OF ACTIONS — TERMI-
   NATION OF SERVICES — DISCOVERY OF INJURY — STATUTES.

   An action based on the malpractice of a state licensed person
   must, under the discovery rule, be brought within two years of
   the time when such person discontinues treating or otherwise
   serving the plaintiff, or within two years of the time plaintiff
   discovers, or in the exercise of reasonable diligence should have
   discovered, the asserted malpractice, whichever is later (MCL
   600.5805[3], 600.5838; MSA 27A.5805[3], 27A.5838).

2. JUDGMENT — ACCELERATED JUDGMENT — STATUTE OF LIMITATIONS
   — MATERIAL DISPUTES — DISCOVERY OF MALPRACTICE.

   Accelerated judgment in an action for malpractice based on the
   statute of limitations is improper where material factual dis-
   putes exist regarding discovery of the asserted malpractice; a
   person must know of the act or omission itself and have good
   reason to believe the act itself was improper or was done in an
   improper manner in order to discover asserted malpractice;
   mere knowledge of the act will be sufficient, under certain
   circumstances, where it alone gives good reason to believe the
   act was improper.

*Philo, Atkinson, Darling, Steinberg, Harper &
Edwards,* for plaintiffs.

*Kerr, Wattles & Russell* (by *James R. Dashiell),*
for defendant.

Before: D. C. RILEY, P.J., and J. H. GILLIS and
MACKENZIE, JJ.

J. H. GILLIS, J. Plaintiffs appeal from an order of
the Oakland County Circuit Court granting accel-
erated judgment to defendant, GCR 1963, 116.1(5),
based on the two-year statute of limitations for
medical malpractice. MCL 600.5805(3), 600.5838;
MSA 27A.5805(3), 27A.5838.

Plaintiff, Jane Leary, began consulting with de-
fendant as her family physician in 1961. In 1963
she was treated by defendant for rheumatic fever.
During the course of this treatment both defen-

dant and plaintiff learned that plaintiff was allergic to penicillin.

The events giving rise to this action began on March 24, 1967, when plaintiff presented herself to defendant with a fever, red throat and headaches. A respiratory infection was diagnosed and polycillin was prescribed.

Polycillin is closely related to penicillin and a number of other antibiotics to which plaintiff is allergic. Dr. Rupp prescribed polycillin because it was the only antibiotic effective against streptococcus which plaintiff had not taken previously.

Plaintiff proved to be allergic to polycillin and a reaction set in. The symptoms included a severe skin rash, blood in the urine, fever, and pain in the joints. Plaintiff was admitted to the hospital and informed by both defendant and an emergency room physician that her condition was a reaction to the polycillin.

Defendant considered plaintiff's situation to be life threatening and put plaintiff on another drug, prednisone, to combat the allergic reaction. Plaintiff's condition improved and she was released from the hospital a few weeks later, although she continued to experience some problems.

June 10, 1967, was the date of plaintiff's last treatment by defendant. In relating her medical history from that date on, plaintiff indicated she experienced on-going bladder problems as well as pain in her back and legs. The bladder problems led her to a urologist and the back and leg pain worsened over the course of the next several years until plaintiff sought medical care in November, 1972. Plaintiff thereafter learned her condition was asceptic necrosis, most probably caused by the drugs she had taken in March and April, 1967.

Plaintiff filed her complaint against Dr. Rupp on

April 2, 1974. The specific acts of malpractice alleged include, *inter alia,* (1) prescribing polycillin when it should have been known that plaintiff was allergic to it, (2) prescribing prednisone when it was unnecessary and contraindicated under the circumstances, (3) prescribing excessive dosages of prednisone, and (4) withdrawing plaintiff from prednisone in a sudden, abrupt and unsafe manner.

Under the "discovery rule", an action based on malpractice of a state licensed person must be brought within two years of the time when such person discontinues treating or otherwise serving the plaintiff, or within two years of the time plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the asserted malpractice, whichever is later. *Dyke v Richard,* 390 Mich 739; 213 NW2d 185 (1973).

In granting accelerated judgment, the trial court stated that plaintiff was aware of the act, harm and possible malpractice in 1967 and her claim was, therefore, barred by the statute of limitations.

Accelerated judgment grounded on the statute of limitations is improper where material factual disputes exist regarding discovery of the asserted malpractice. *Kelleher v Mills,* 70 Mich App 360; 245 NW2d 749 (1976).

In the instant case the parties dispute the date plaintiff discovered or by reasonable diligence could have discovered the asserted malpractice. Part of this dispute arises out of confusion over what is meant by the term "asserted malpractice". Defendant contends that because plaintiff knew of the act and resulting harm in 1967 she, therefore, knew of the asserted malpractice and the statute of limitations began to run at that time.

A person usually visits a doctor because of a

physical or mental problem. Therefore, it is easy to assume that subsequent developments are due to the problem which initiated the contact rather than negligence on the part of the doctor. In addition, the doctor himself may allay any suspicions the patient might have. See *Kelleher, supra, Cates v Frederick W Bald Estate,* 54 Mich App 717; 221 NW2d 474 (1974). For these reasons knowledge of the act and resulting injury alone may be insufficient to commence the running of the statute of limitations. On the other hand, it is not necessary that the plaintiff recognize that she has suffered an "invasion of a legal right". *Patterson v Estate of Flick,* 69 Mich App 101; 244 NW2d 371 (1976). We conclude that in order to discover "asserted malpractice" a person must know of the act or omission itself, *i.e.,* prescribing polycillin, and have good reason to believe the act itself was improper or was done in an improper manner.

Under certain circumstances mere knowledge of the act will be sufficient because it alone gives good reason to believe it was improper. For example, in *Patterson, supra,* the defendant severed a femoral nerve during an appendectomy resulting in paralysis.

In contrast, a person may know of both the act and some resulting pain but not be aware of any wrongdoing by defendant. In *Kelleher, supra,* the plaintiff knew of the act, the fitting of dentures, and resulting discomfort. However, because of the dentist's statement indicating plaintiff "didn't know how to wear dentures" it was held to be a question of fact whether plaintiff discovered or should have discovered the asserted malpractice.

In the instant case, while plaintiff knew of some of the acts, *i.e.,* the prescribing of polycillin and prednisone, and the resulting harm, allergic reac-

tion and pain in the legs, reasonable minds could differ as to when she should have realized that the doctor had acted improperly. For this reason, accelerated judgment should not have been granted. *Schalm v Mt Clemens General Hospital,* 82 Mich App 669; 267 NW2d 479 (1978), *Weiss v Bigman,* 84 Mich App 487; 270 NW2d 5 (1978).

Reversed and remanded for proceedings consistent with this opinion. Costs to appellant.