## JURAVLE v OZDAGLER

Docket No. 80347. Submitted November 15, 1985, at Detroit.—Decided December 9, 1985.

Ion Juravle was admitted to Mercy Memorial Hospital by Dr. I. Haq on April 11, 1978, for treatment of an inflammation of the gall bladder. Dr. Haq also referred Juravle to Dr. M. N. Ozdagler, a surgeon, for removal of the gall bladder. On April 17, 1978, Dr. Ozdagler performed surgery and subsequently informed Juravle that he could not find a gall bladder and theorized that perhaps it had been removed in a prior operation. Juravle was discharged from the hospital on April 24, 1978. Juravle continued to experience abdominal pain, and Dr. Ozdagler provided follow-up care through June 2, 1978. Juravle continued to see Dr. Haq, primarily for treatment of an asthma condition, until May 3, 1979. Juravle then consulted another physician and was admitted to Wayne County General Hospital on April 26, 1980. The attending physicians informed Juravle that he did have a gall bladder and recommended its removal. Juravle then went to Dr. Ozdagler's office on May 28, 1980, to pick up his medical records. Juravle's gall bladder was removed on September 11, 1980. On April 22, 1981, Juravle filed a medical malpractice action against Drs. Ozdagler and Haq and Mercy Memorial Hospital in Monroe Circuit Court. Plaintiff later added claims of breach of contract and fraudulent concealment against Dr. Ozdagler and Mercy Memorial Hospital. The court, James J. Kelley, Jr., J., granted defendants' motions for accelerated judgment as to the medical malpractice claims, holding that the action was barred by the statute of limitations. Plaintiff appealed. *Held:*

1. The two-year period of limitation for medical malpractice

REFERENCES

Am Jur 2d, Appeal and Error §§ 684-701.

Am Jur 2d, Physicians, Surgeons, and other Healers §§ 316-325.

Am Jur 2d, Pleading §§ 306-338.

When statute of limitations commences to run against malpractice action based on leaving foreign substance in patient's body. 70 ALR3d 7.

See also the annotations in the ALR3d/4th Quick Index under Ammendment of Pleadings; Limitation of Actions.

actions had expired prior to the filing of plaintiff's lawsuit. The isolated visits to Dr. Haq on May 3, 1979, and Dr. Ozdagler on May 28, 1980, cannot be considered to have been a continuation of the earlier treatment for gall bladder problems.

2. Plaintiff's action is also barred by the statute of limitations because it was brought more than six months after plaintiff discovered that he had a malpractice claim.

3. The trial court did not abuse its discretion by refusing to defer granting Mercy Memorial Hospital's motions for accelerated and summary judgments until plaintiff could file a motion to amend his complaint to add a claim against the hospital under a theory of *respondeat superior.*

Affirmed.

1. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE.

Claims for medical malpractice must be brought within two years after the last treatment by the defendant or within six months after discovery of the malpractice claim (MCL 600.5805, 600.5838; MSA 27A.5805, 27A.5838).

2. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE.

The two-year period of limitation for bringing a medical malpractice action begins to run upon the date that an ongoing patient-physician relationship ceases for matters out of which the claim for malpractice arises.

3. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE — REVIVAL OF ACTIONS.

An isolated visit by a patient to his physician after the expiration of the period of limitation for bringing a medical malpractice action against the physician cannot act to revive the statutory period for bringing the action.

4. LIMITATION OF ACTIONS — MEDICAL MALPRACTICE.

A plaintiff discovers a cause of action for medical malpractice when the act or omission of the defendant becomes known and the plaintiff has reason to believe that the medical treatment either was improper or was performed in an improper manner.

5. APPEAL — APPELLATE BRIEFS — STATEMENT OF QUESTIONS INVOLVED.

All issues suggested in the statement of questions involved in an appellate brief should be considered by the Court of Appeals (MCR 7.212[C][4]).

6. PLEADING — AMENDMENT OF PLEADINGS — APPEAL.

The appropriate standard of review for a trial court's denial of a

motion to amend pleadings is whether the court abused its discretion.

*John S. France,* for plaintiff.

*Weipert, Morr & Weipert* (by *Michael A. Weipert),* for M. N. Ozdagler, M.D., and I. Haq, M.D.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman),* for Mercy Memorial Hospital.

Before: Beasley, P.J., and V. J. Brennan and Cynar, JJ.

Per Curiam. The plaintiff, Ion Juravle, filed a medical malpractice action against defendants M. N. Ozdagler, I. Haq, and Mercy Memorial Hospital in the Monroe County Circuit Court on April 22, 1981. The trial court granted defendants' motions for accelerated judgment on August 14, 1984, holding that the applicable period of limitation barred the suit. GCR 1963, 116.1(5) (MCR 2.116[C][7]). The appropriate order was entered on August 27, 1984. From this order, the plaintiff appeals as of right.

This case arises out of the medical treatment of the plaintiff's gall bladder. The plaintiff visited Dr. Haq, an internal medical specialist in Monroe, prior to April 11, 1978, for treatment of a chronic abdominal pain. Haq admitted the plaintiff to Mercy Memorial Hospital in Monroe for treatment of cholecystitis, an inflammation of the gall bladder, on April 11, 1978, and referred him to a surgeon, Dr. Ozdagler, also located in Monroe. The plaintiff signed a consent form authorizing Ozdagler to perform a cholecystectomy, removal of the gall bladder. Ozdagler performed an exploratory laparotomy, a partial omentectomy, and a lysis of

adhesions on April 17, 1978. Ozdagler told the plaintiff that he could not find a gall bladder and theorized that it had been removed in a prior operation. The plaintiff was discharged from the hospital on April 24, 1978.

Following the surgery, the plaintiff continued to suffer abdominal pain. Ozdagler provided follow-up care through June 2, 1978. The plaintiff continued to see Haq, primarily for treatment of an asthma condition, until May 3, 1979. Subsequently, the plaintiff consulted with another physician and in March, 1980, began consulting with lawyers. The plaintiff was admitted to Wayne County General Hospital on April 26, 1980. The attending physicians informed him that he had a gall bladder and recommended surgery. The plaintiff went to Ozdagler's office to pick up his medical records on May 28, 1980. The parties dispute whether Ozdagler conducted an examination at that time. The plaintiff's gall bladder was removed on September 11, 1980.

The plaintiff filed a medical malpractice suit on April 22, 1981, against the three defendants. The hospital filed a motion for accelerated judgment on October 28, 1982, in which the other defendants subsequently joined. Before the motion was heard, the plaintiff was granted leave to amend the complaint on August 31, 1983, to add claims of breach of contract and fraudulent concealment against Ozdagler and the hospital. On April 14, 1984, the trial court granted defendants' motion for accelerated judgment as to the contract claim based on noncompliance with the statute of frauds and granted partial summary judgment on the fraudulent concealment. Neither of these holdings is the subject of this appeal.

With regard to the malpractice claim, the judge granted accelerated judgment as to Haq because

the parties agreed that the period of limitation had run. Later in the proceedings, however, the plaintiff's attorney realized that he had made a mistake and asked the court to reconsider its ruling favoring Haq. He argued that Haq treated the plaintiff on May 3, 1979, bringing him within the two-year period. The judge held that the May 3 treatment was unrelated to the malpractice claim and, thus, that the plaintiff brought his claim after the expiration of the period of limitation. The court also granted Ozdagler's motion for accelerated judgment on the grounds that the plaintiff brought suit after the two-year period had expired. The judge reasoned that the plaintiff's visit with Ozdagler on May 28, 1980, could not extend the limitation period when the period had already lapsed.

The parties agreed that the granting of the motions relating to the concealment and contract claims effectively removed the hospital from the case, apparently because the period of limitation for malpractice against the hospital had expired before plaintiff filed suit. To extend the period of limitation against the hospital, the plaintiff's lawyer requested the court to postpone granting the hospital's motions until the plaintiff could amend the complaint to allege that the hospital was responsible for Ozdagler's treatment on a theory of *respondeat superior.* The judge noted that the hospital's motion had been pending for two years and refused to grant any verbal motions for leave to amend. The court entered its order of accelerated and summary judgment on August 27, 1984.

The first issue to be considered is whether the plaintiff commenced suit within two years after the discontinuation of treatment by the defendants or within six months after discovery of his claim for malpractice.

Claims for medical malpractice must be brought within two years after the last treatment by the defendant or within six months after discovery of the malpractice claim. MCL 600.5805, 600.5838; MSA 27A.5805, 27A.5838.

The two-year period of § 5805 begins to run upon the date that an ongoing patient-physician relationship ceases. *Heisler v Rogers,* 113 Mich App 630, 633; 318 NW2d 503 (1982). In the instant case, the trial court read *Heisler* to imply that the last treatment must relate to the claim of malpractice. This implication is supported by the language of § 5838, which states that the accrual date for malpractice claims beings when the professional discontinues treating the plaintiff for "matters out of which the claim for malpractice arose".

Beginning with the services of Dr. Haq, the nature of treatment rendered on May 3, 1979, is the crux of the debate between the parties on appeal. Relying on Haq's deposition, the plaintiff contends that Haq evaluated the plaintiff for the possibility of gall bladder problems on May 3. The portion of the deposition cited by the plaintiff relates to his visits with Haq on January 29, 1979, during which the plaintiff complained of a pain in the right upper quadrant. Haq treated the plaintiff for asthma and heartburn. He made the general statement that a pain in this area is a symptom of gall bladder problems. From this general statement, the plaintiff argues that Haq treated the plaintiff for gall bladder problems. However, the deposition clearly shows that Haq restricted his treatment to the asthma condition and specifically referred the plaintiff to other physicians for the gall bladder problem. The plaintiff's last visit with Haq was on May 3, 1979, at which time the doctor continued to treat the asthma by prescribing a drug to counteract gastric irritation caused by

previously prescribed medicine. Based on a reading of the entire deposition, Haq ceased treating the plaintiff's gall bladder problem in 1978 and, thereafter, restricted his services to matters unrelated to the malpractice claim.

Turning to the last treatment rendered by Ozdagler, the relevant date is May 28, 1980. Prior to that date, Ozdagler provided follow-up care to the plaintiff until June 2, 1978. On May 28, 1980, the plaintiff went to Ozdagler's office to pick up his medical records for review by another doctor and lawyer. The plaintiff told the doctor that he was not going to sue him. A dispute exists over whether Ozdagler examined the plaintiff's scar and palpated his abdomen on May 28. The plaintiff presented an improperly notarized affidavit at the hearing, alleging that Ozdagler examined the plaintiff's scar and felt his abdomen. The judge considered the defective affidavit but Ozdagler does not make an issue of this. Ozdagler claims that he did not treat the plaintiff on May 28. Notwithstanding this factual dispute, the judge ruled that the period of limitation expired prior to May 28 and that the visit could not revive it. He relied on *Heisler, supra,* where this Court held that an isolated visit after the period of limitation has expired cannot act to revive the statutory period.

Ozdagler states in his appellate brief that he last treated the plaintiff for such a disorder on June 2, 1978. With June 2 as the accrual date, the two-year period would not end until June 1, 1980. Thus, the period of limitation did not expire prior to the visit on May 28, 1980.

The question still remains, however, whether the May 28 visit is the proper accrual date. The limitation period begins to run after the cessation of the "ongoing doctor-patient relationship and its accompanying air of trustfulness". *Heisler, supra,*

p 634. In the instant case, approximately two years elapsed between the follow-up visit on June 2, 1978, and the May 23, 1980, visit. Moreover, the air of trustfulness between doctor and patient did not exist when the plaintiff's only purpose was to obtain his records for another doctor and he had previously consulted with various attorneys to bring a malpractice suit. This isolated visit, nearly two years after postoperative treatment ceased, is not a continuation of treatment and, therefore, cannot be used to extend the period of limitation.

It is undisputed that the suit was commenced three years after the plaintiff was released from the hospital on April 24, 1978. The period of limitation as to the hospital claim had expired and plaintiff's argument in an attempt to keep the hospital in the suit because Haq and Ozdagler were its alleged agents is without merit.

The next determination we must make is whether the six-month discovery rule barred plaintiff's claim.

The following two-pronged test determines when the plaintiff discovered or should have discovered a malpractice claim: (1) when "the act or omission of the defendant becomes known; and (2) the plaintiff has reason to believe that the medical treatment either was improper or was performed in an improper manner". *Adkins v Annapolis Hospital,* 116 Mich App 558, 565; 323 NW2d 482 (1982), *aff'd* 420 Mich 87; 360 NW2d 150 (1984). Under the first prong of the test, the plaintiff was told that he had a gall bladder on or about April 26, 1980. The second prong was satisfied shortly thereafter when the plaintiff consulted with an attorney who advised him that he should initiate suit once the gall bladder was removed. The plaintiff's attorney sent Ozdagler a letter, dated September 16, 1980, stating that he would represent the plaintiff in a

malpractice claim against the doctor. The complaint was filed on April 22, 1981, almost one year after discovery of the alleged malpractice.

Finally, plaintiff argues that the trial judge erroneously denied the plaintiff's request to postpone granting accelerated judgment favoring the hospital until the plaintiff had the opportunity to submit a written motion to amend the complaint to add a claim of *respondeat superior.*

Before we address the propriety of the judge's denial of the purported motion to amend, our discussion will first address the motions of Haq and Ozdagler under MCR 7.212(H) to strike this portion of the plaintiff's brief based on his failure to include this issue in the statement of questions involved, as required by MCR 7.212(C)(4). If an issue is suggested in the statement of questions involved, it should be considered. *People v D'Avanzo,* 125 Mich App 129, 131; 336 NW2d 238 (1983). Although the plaintiff's entire brief is cursory, the statement of the question involved is broad enough to encompass the amendment issue since it is logically connected to the statute of limitations relating to the hospital. The plaintiff attempts to argue that the suit against the hospital is not barred by the period of limitation since the hospital's statutory period would run concurrently along with the statutory period of the doctors who were its agents. We will exercise our discretion to decide this issue.

At the outset, the plaintiff incorrectly represents that the judge denied a motion to amend. The plaintiff never filed a motion to add the theory of *respondeat superior.* He merely requested that the judge defer granting the hospital's motions for accelerated and summary judgments until he could file a motion to amend. The trial court construed the plaintiff's request as a verbal motion

for leave to amend, which was permitted under GCR 1963, 110.2(1), 118.1 (currently MCR 2.119[A], 2.118[A], respectively). The appropriate standard of review is whether the lower court abused its discretion. *Summers v Hoffman,* 341 Mich 686, 699; 69 NW2d 198 (1955). The hospital's motions were pending for two years, during which time the complaint was amended once. The plaintiff admitted that the only reason for the amendment would be to extend the period of limitation against the hospital. Moreover, granting leave to amend would have been futile since the plaintiff's claims against the doctors were barred by the statute of limitations. Based on these factors, there was no abuse of discretion.

Affirmed.