PENDELL v JARKA

Docket No. 85807. Submitted May 8, 1986, at Grand Rapids. Decided
    December 1, 1986. Leave to appeal denied, 428 Mich —.
    Plaintiff, Harold J. Pendell, injured his shoulder in April, 1981.
        He was treated by defendant Robert W. Jarka, an orthopedist,
        between April and August, 1981. On August 23, 1981, Jarka
        performed a closed manipulation procedure on plaintiff's shoul-
        der at defendant St. Mary's Hospital. On October 8, 1981,
        plaintiff underwent surgery at St. Mary's to prevent chronic
        dislocation of his shoulder. Thereafter, he attended physical
        therapy for approximately three weeks and had three follow-up
        visits with Jarka, the final visit being in November, 1981. On
        December 19, 1981, plaintiff returned to Jarka with complaints
        of numbness in his fingers. Jarka referred plaintiff to a neurolo-
        gist. In February, 1982, apparently dissatisfied with the neurol-
        ogist's treatment, plaintiff went on his own initiative to the
        Mayo Clinic. On February 25, 1982, plaintiff requested and
        received a letter from Jarka outlining the care and treatment
        rendered plaintiff by Jarka. At this time, plaintiff also received
        copies of his medical records from Jarka. Plaintiff was subse-
        quently treated at Mayo Clinic. Sometime between January
        and June, 1983, plaintiff consulted with an attorney because he
        thought a mistake had been made in the closed manipulation
        procedure. In February, 1984, a physician was retained to
        evaluate plaintiff's claim and advised plaintiff that the manipu-
        lation had, indeed, been improperly performed. On February
        21, 1984, plaintiff filed a medical malpractice action against
        defendants in the Kent Circuit Court. The court, Woodrow A.
        Yared, J., granted summary judgment for defendants based on
        the statute of limitations. Plaintiff appealed.
    The Court of Appeals *held:*
    The court properly granted summary judgment.

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers § 320.
Statute of limitations applicable to malpractice action against
    physician, surgeon, dentist, or similar practitioner. 80 ALR2d
    320.
When statute of limitations commences to run against malpractice
    action against physician, surgeon, dentist, or similar practitioner.
    80 ALR2d 368.

1. Plaintiff did not allege on appeal that the claim against the hospital was not barred.

2. The essence of the last treatment rule for statute of limitations purposes in medical malpractice actions is that the cessation of the ongoing patient-physician relationship marks the point where the statute of limitations begins to run; when the ongoing doctor-patient relationship and its accompanying air of trustfulness in one's own doctor ends, the statute of limitations begins to run. The doctor-patient relationship ended on December 29, 1981, when Dr. Jarka referred plaintiff to a neurologist.

Affirmed.

LIMITATION OF ACTIONS — MEDICAL MALPRACTICE — LAST TREATMENT RULE.

The essence of the last treatment rule for statute of limitations purposes in medical malpractice actions is that the cessation of the ongoing patient-physician relationship marks the point where the statute of limitations begins to run; when the ongoing doctor-patient relationship and its accompanying air of trustfulness in one's own doctor ends the statute of limitations begins to run.

*Frank Stanley,* for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Jane E. Markey* and *Mary L. Cawley*), for defendant Robert W. Jarka, M.D.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healey Zitterman*), for defendant St. Mary's Hospital.

Before: D. E. HOLBROOK, JR., P.J., and WAHLS and M. E. DODGE,* JJ.

PER CURIAM. On February 21, 1984, plaintiff, Harold J. Pendell, filed a medical malpractice action against defendants, Robert W. Jarka and St. Mary's Hospital, in the Kent Circuit Court. By order entered on May 20, 1985, the trial court

---

* Circuit judge, sitting on the Court of Appeals by assignment.

granted defendants' motion for summary disposition, holding that the applicable period of limitations barred plaintiff's suit. MCR 2.116(C)(7). Plaintiff appeals as of right.

Plaintiff injured his shoulder in April, 1981. He was treated by defendant Jarka, an orthopedist, between April and August, 1981. On August 23, 1981, Jarka performed a closed manipulation procedure on plaintiff's shoulder at St. Mary's Hospital. On October 8, 1981, plaintiff underwent surgery at St. Mary's to prevent chronic dislocation of his shoulder. Thereafter, he attended physical therapy for approximately three weeks and had three follow-up visits with Jarka, the final one being in November, 1981. On December 29, 1981, plaintiff returned to Jarka with complaints of numbness in his fingers. Jarka referred plaintiff to Dr. Gracias, a neurologist. In February, 1982, apparently dissatisfied with Gracias' treatment, plaintiff went on his own initiative to the Mayo Clinic. To this end, on February 25, 1982, plaintiff requested and received a letter from Jarka, directed "To Whom it May Concern," outlining the care and treatment rendered plaintiff by Jarka. At this time, plaintiff also received copies of his medical records from Jarka. Plaintiff was subsequently treated at Mayo Clinic.

Sometime between January and June, 1983, plaintiff consulted with an attorney because he thought a mistake had been made in the closed manipulation procedure. In February, 1984, a physician was retained to evaluate plaintiff's claim and advised plaintiff that the manipulation had, indeed, been improperly performed. Plaintiff then filed the medical malpractice suit on February 21, 1984. Thereafter, defendant Jarka filed a motion for summary disposition pursuant to MCR 2.116(C)(7) on the ground that plaintiff's action was

barred by the applicable statute of limitations. Defendant St. Mary's subsequently joined the motion. The trial court agreed with defendants and accordingly granted their motion.

Claims for malpractice must be brought within two years after the last treatment by the defendant or within six months after discovery of the malpractice claim. MCL 600.5805(4), 600.5838; MSA 27A.5805(4), 27A.5838. Accrual of the claim with respect to the two-year period is governed by MCL 600.5838; MSA 27A.5838, which in pertinent part states:

> (1) A claim based on the malpractice of a person who is, or holds himself out to be, a member of a state licensed profession . . . accrues at the time that person discontinues treating or otherwise serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

We first note that in his brief on appeal plaintiff has focused completely on defendant Jarka to the exclusion of St. Mary's Hospital. The date of plaintiff's last treatment by St. Mary's was sometime in late September, 1981. Plaintiff makes no claim that Jarka was an employee or agent of the hospital or that the hospital is in any way vicariously liable for Jarka's actions. Since plaintiff filed his complaint on February 21, 1984, more than two years after the hospital's last treatment of plaintiff, we find that his suit against the hospital is barred by the two-year limitations period.

With respect to Jarka, plaintiff contends that the doctor's actions on February 25, 1982, in turning over medical records to plaintiff and preparing the referral letter outlining his treatment of plain-

tiff and his actions around February 22, 1982, in reviewing medical reports sent from Dr. Gracias, constituted "treating or otherwise serving" within the meaning of § 5838.

Plaintiff relies on several prior decisions of this Court in making his argument. We find these to be factually distinguishable from the within case. In both *DeGrazia v Johnson,* 105 Mich App 356; 306 NW2d 512 (1981), and *Shane v Mouw,* 116 Mich App 737; 323 NW2d 537 (1982), the Court pointed to the fact that there was no evidence of any occurrence between the parties prior to their phone conversations which would indicate that the physician-patient relationship had ended. *DeGrazia, supra,* p 360; *Mouw, supra,* p 741.

Instead, we find the recent case of *Bosel v Babcock,* 153 Mich App 592; 396 NW2d 448 (1986), to be helpful. In that case, the defendant doctor transferred plaintiff to a different hospital to be treated by different doctors on February 26, 1982, after his own treatments proved to be unsuccessful. Subsequently, the plaintiff went to the defendant's office on April 14, 1982, in order to return some of the equipment owned by the defendant which was related to the defendant's treatment of the plaintiff. At that time the defendant recommended a physicial therapy service to the plaintiff. The plaintiff contended that this visit constituted "treating or otherwise serving" thereby tolling the statute of limitations. This Court disagreed holding that, due to the occurrence of the transfer of plaintiff to another hospital to be treated by another doctor, defendant discontinued treating or otherwise serving plaintiff and the statute of limitations began to run on that date.

*Bosel* follows the essence of the last treatment rule which is that the cessation of the ongoing patient-physician relationship marks the point

where the statute of limitations begins to run. *Heisler v Rogers,* 113 Mich App 630, 633; 318 NW2d 503 (1982). When the ongoing doctor-patient relationship and its accompanying air of trustfulness in one's own doctor ends, the statute of limitations begins to run. *Heisler, supra,* p 634.

In the instant case, the actions of the parties indicated that the ongoing physician-patient relationship and its accompanying "air of trustfulness" terminated prior to the February 25, 1982, visit. On December 29, 1981, plaintiff was referred by Jarka to Gracias because, as an orthopedist, Jarka was unable to treat plaintiff's complaints of numbness. When plaintiff decided that he was dissatisfied with Dr. Gracias' care, he did not return to Jarka for further treatment but, rather, went on his own initiative to the Mayo Clinic.

We conclude that the referral on December 29, 1981, of plaintiff by Jarka to a different doctor constituted the cessation of the "ongoing physician-patient" relationship between plaintiff and Jarka. At this point the statute of limitations began to run. The air of trustfulness between doctor and patient did not exist on February 25, 1982, when the plaintiff's only purpose was to obtain his medical records and past history to facilitate his treatment by another doctor. See, e.g., *Juravle v Ozdagler,* 149 Mich App 148; 385 NW2d 627 (1985). By his own admission plaintiff sought the records and report to facilitate his care at Mayo Clinic.

Plaintiff suggests that Jarka's review of the letters sent by Doctor Gracias concerning the latter's treatment of plaintiff (which could possibly have been later than February 21, 1984) constituted "treating or otherwise serving." To the extent that dicta in *Penner v Seaway Hospital,* 102 Mich App 697; 302 NW2d 285 (1981), lv den 417

Mich 974 (1983), suggests that this is an appropriate rule, we decline to follow it. Referral of patients between physicians for any number of reasons is a common practice. Oftentimes, as in this case, the referral constitutes the cessation of the patient-doctor relationship and review of the second physician's report is merely a professional courtesy. Such a review does not necessarily mean, however, that the original doctor intends to resume treatment of the patient. To allow such a minor act to constitute "treating or otherwise serving" the patient within the meaning of § 5838 would invite abuse.

In the factual situation presented herein the trial court did not err in finding that Jarka discontinued treating or serving plaintiff on December 29, 1981, and in concluding that plaintiff's cause of action accrued on that date. Consequently, plaintiff's suit, commenced on February 21, 1984, was barred by the applicable limitations period and the trial court did not err in so concluding.

Plaintiff next contends that his suit is not barred by the statute of limitations under the date of discovery rule, MCL 600.5838(2); MSA 27A.5838(2). That statute provides that a malpractice action may be commenced within six months after the plaintiff discovers or should have discovered the existence of the claim. Plaintiff asserts that he did not discover his injury until February, 1984.

Summary disposition grounded on the statute of limitations is improper when material factual disputes exist with regard to discovery of the asserted malpractice. *Heisler, supra,* p 635. In *Leyson v Krause,* 92 Mich App 759; 285 NW2d 451 (1979), this Court noted the contrary rule:

We note that, if the undisputed facts revealed

that the claim was barred by the statute of limitations (*i.e.*, had plaintiff admitted in her deposition that she realized in 1971 that defendant had breached the applicable standard of care), the issue would be a question of law which is within the exclusive province of the court, even where a jury trial is requested. [*Leyson, supra,* p 765, n 2.]

This Court has held that in order to discover "asserted malpractice" a person must know of the act or omission and have good reason to believe that the act was improper or was done in an improper manner. *Leary v Rupp,* 89 Mich App 145, 148; 280 NW2d 466 (1979). See also *Jackson v Vincent,* 97 Mich App 568; 296 NW2d 104 (1980); *Leyson, supra.*

We find the evidence to be undisputed here that plaintiff knew of his claim well before the six-month period prior to instituting suit. Plaintiff admitted in his deposition that he first thought he had a claim against Jarka after the closed manipulation procedure was performed but before his surgery in October, 1981. At the very latest, plaintiff admitted that he had thought about bringing a lawsuit while he was still undergoing treatment with Jarka. This indicates that plaintiff knew of a possible claim two years prior to the date he filed his complaint. Therefore, we conclude that plaintiff's claims against both Jarka and the hospital were barred by the six-month discovery rule.

Affirmed. Costs to appellees.